J-S64027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES EDWARDS, | |
| Appellant | No. 572 WDA 2014 |

Appeal from the Judgment of Sentence Entered March 6, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001024-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 15, 2014**

Appellant, Charles Edwards, appeals from the judgment of sentence of 240 to 480 months' imprisonment.  Appellant alleges that the evidence is insufficient to sustain his conviction, the verdict is against the weight of the evidence, the evidence is insufficient to support the trial court's finding that he is a sexually violent predator, and his sentence is an abuse of discretion. We affirm.

We have examined the certified record, the briefs of the parties, and the applicable law.  Additionally, we have reviewed the opinion of the Honorable Ernest J. DiSantis, Jr., of the Court of Common Pleas of Erie County.  We conclude that Judge DiSantis's well-reasoned opinion accurately disposes of the issues presented by Appellant.  Accordingly, we adopt Judge

DiSantis's opinion as our own and affirm Appellant's judgment of sentence on that basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: **10/15/2014**

COMMONWEALTH OF PENNSYLVANIA,     : IN THE COURT OF COMMON PLEAS
              Appellee,               : OF ERIE COUNTY, PENNSYLVANIA
                             : CRIMINAL DIVISION
             V.                         :

CHARLES EDWARDS,                  :
             Appellant             : No. 1024 OF 2013

## MEMORANDUM OPINION

Appellant, Charles Edwards, appeals from the judgment of sentence entered on March 6, 2014, following his conviction of rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, indecent assault, terroristic threats, theft by unlawful taking, and unlawful restraint.[1] Based upon the following, this Court respectfully requests that Appellant's judgment of sentence be affirmed.

### BACKGROUND OF THE CASE

This case stems from Appellant's rape of the victim ▮▮▮▮▮▮▮▮▮▮ in the early morning hours on July 15, 2012 in the 400 block of West 10th Street, Erie, Pennsylvania. Earlier that night, the victim, Steven ▮▮▮▮ (her boyfriend), her friend Becky, and another individual went to a few bars in downtown Erie. During that time, the victim and her friends consumed alcohol. At some point, ~~▮▮▮▮~~ *Steven* left, and the victim and Becky separated. The victim then began to walk to ~~▮▮▮▮~~ *Steven's* apartment, which was located on West 10th Street. During this time, she contacted ~~▮▮▮▮~~ *Steven* for a ride. N.T. Trial (Day 2), 11/13/13, at 4-8, 27, 29.

While the victim was walking, ▮▮▮▮▮▮ *the victim* was brutally attacked by Appellant, who dragged her across a yard to the side of a house, told her that he had a knife, threatened her, told her to disrobe, took off her clothes, vaginally raped her, and forced

---

[1] 18 Pa.C.S.A. §§ 3121(a)(2), 3123(a)(2), 3124.1, 3126(a)(3), 2706(a)(1), 2921, and 2902 (a)(2), respectively.

1

her mouth on his penis. Appellant took the victim's cell phone and identification card. He told her that if she told anybody, he would find her. N.T. Trial (Day 2), 11/13/13, at 10-16.

Eventually, the victim was able to escape. She ran across West 10th Street holding her pants and flagged down a good samaritan. She was screaming, crying, hysterical, and naked from the waist down. She told the driver "he knows where I live, he's got my cell phone." N.T. Trial (Day 2), 11/13/13, at 60-63.

After police arrived, she was taken to the hospital where she was examined. Ms. Cathy Robinson, a forensic nurse, performed a rape examination. She noted multiple debris particles in and around the victim's genitals, including what appeared to be yellowish and green leafy debris. Ms. Robinson observed internal injury to the victim's vagina and cervix. There were several bruises and scratches on both forearms and wrists, both thighs, a hand abrasion, several scratches to her back, and multiple scratches and bruises to her knees and shins. Both elbows were abraded, open and bleeding N.T. Trial (Day 2), 11/13/13, at 15,19-22, 99-100, 102-105.

The police recovered a black hat from the crime scene located between bushes and a house. Ultimately, the hat was forensically tested and Appellant's DNA was found in the hat. Appellant's DNA was also found in a vaginal swab and sample found in the victim's jeans. N.T. Trial (Day 2), 11/13/13, at 79-80, 127, 184, 189-190.

The victim was unable to name her attacker, but told police he was in his 20s or 30s. At trial, the victim identified Appellant as the assailant. N.T. Trial (Day 2), 11/13/13, at 17, 256.

2

At trial, the defense claimed that the victim and Appellant knew each other. Appellant claimed they did not have sex that night (despite his girlfriend's testimony to the contrary), although they had on prior occasions. The defense also alleged that the victim stole Appellant's hat from his girlfriend's apartment.

On November 14, 2013, following a three day jury trial, Appellant was found guilty of the above offenses. Following the trial, this Court ordered a sexual violent predator (SVP) assessment pursuant to Pennsylvania's version of "Megan's Law", the Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §9799.10 et. seq. ("SORNA").

Appellant's SVP hearing was held on March 6, 2014. At that time, Brenda A. Manno, a licensed clinical social worker and board member of the Pennsylvania Sexual Offender Assessment Board, testified to a reasonable degree of professional certainty that Appellant met the statutory criteria for classification as a sexually violent predator. N.T. SVP and Sentencing, 03/06/14, at 14. At the conclusion of the SVP hearing, this Court found that Appellant was a sexually violent predator. Id., at 33. Its findings are reflected in the record.

Following the SVP hearing, Appellant was sentenced as follows: 120 to 240 months' incarceration at Count 1 (rape), consecutive to Docket No. 1786 of 1993; 120 to 240 months' incarceration at Count 2 (IDSI), consecutive to Count 1; 12 to 24 months' incarceration at Count 5 (terroristic threats), concurrent to Count 1; 6 to 12 months' incarceration at Count 6 (theft by unlawful taking), concurrent to Count 1; and, 12 to 24 months' incarceration at Count 8 (unlawful restraint), concurrent to Count 1. Courts 3 and 4 merged for sentencing purposes.

3

On April 4, 2014, Appellant filed a Notice of Appeal. On April 7, 2014, this Court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925. Appellant complied on April 28, 2014, and raises seven issues on appeal. Appellant's Rule 1925(b) statement, at pgs. 1-4.

## A. Whether the verdict was against the weight of the evidence?

Appellant claims the verdict was against the weight of the evidence because the victim contradicted herself "at least ten (10) times on factual matters and that those factual matters were a substantial deviation from what the Commonwealth alleged happened." Appellant's Rule 1925 (b) statement, at ¶ 1.

> In evaluating Appellant's argument, the Court must bear in mind that:

> [t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013)(citations omitted).

Challenges to the sufficiency of the evidence and to the weight of the evidence are different. In the latter setting, the trial court is not required to view the evidence in the light most favorable to the verdict winner. *Tibbs v. Florida*, 457 U.S. 31, 38 (1982). The motion is addressed to the discretion of the trial court. *Commonwealth v. Brown*, 648 A.2d 1177 (Pa. 1994). The motion should be granted only if the court "concludes that despite the abstract sufficiency of the evidence to sustain the verdict, the evidence

4

preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Tibbs,* 457 U.S. at 38 n.11. (citation omitted).

Appellant's claim that the verdict was against the weight of the evidence concedes there was sufficient evidence to support the jury's verdict. *Commonwealth v. Whiteman,* 485 A.2d 459 (Pa. Super. 1984).

Here, Appellant did not file a post sentence motion. However, at sentencing, he requested judgment of acquittal pursuant Pa.R.Crim.P. Rule 720 because: (1) three types of male DNA were found inside the victim; (2) the victim's late identification; and, (3) the victim was drunk at the time of the rape. This Court denied his oral motion. At that time, Appellant failed to raise the issue he now raises on appeal. Therefore, it is waived. However, assuming this issue was preserved, this Court finds it meritless. As noted above, the Appellant must establish that the verdict was so contrary to the evidence as to shock one's sense of justice. *Taylor, supra.* The victim's testimony was credible and the Appellant's version of the events did not undermine her veracity. Moreover, the verdict clearly does not shock one's sense of justice. Accordingly, this Court properly denied his post-trial claim.

### B. Whether there was sufficient evidence to convict Appellant?

Appellant claims there was insufficient evidence to convict him of the crimes because: (1) the victim ▮▮▮▮▮▮▮▮ "contradicted herself on at least ten (10) times on factual matters"; (2) in regard to Counts 1-6, the Commonwealth failed to prove force or that the victim was restrained/threatened in any way because "three (3) types of male DNA were found via the rape kit and the victim described a man in his mid-20s as the assailant"; and (3) the victim ▮▮▮▮ had consumed a large quantify of alcohol and smoked marijuana before

5

the sexual assault "and was not able to provide specifics that matched the description of Appellant, the Commonwealth could not and/or did not prove that Appellant and/or another perpetrator had the intent to sexually assault, threaten, restrain and/or steal anything from the victim in any way, in fact the evidence shows that the victim described a completely different assailant and that three (3) types of male DNA were found via the rape kit". Appellant's Rule 1925 statement, at ¶ 2 (a)-(c).

As the Pennsylvania Superior Court has noted:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa. Super. 2003) (citations omitted).

Appellant was convicted of the following offenses which are defined, *inter alia*:

## § 3121. Rape

**(a) Offense defined.**--A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

. . .

(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

## § 3123. Involuntary deviate sexual intercourse

**(a) Offense defined.**--A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

. . .

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

## § 3124.1. Sexual assault

Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

## § 3126. Indecent assault

**(a) Offense defined.**--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
. . .

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

## § 2706. Terroristic threats

**(a) Offense defined.**--A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

## § 3921. Theft by unlawful taking or disposition

**(a) Movable property.**--A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

## § 2902. Unlawful restraint

**(a) Offense defined.**-- Except as provided under subsection (b) or (c), a person commits a misdemeanor of the first degree if he knowingly:

. . .

(2) holds another in a condition of involuntary servitude.

The victim testified that Appellant threatened and sexually assaulted her. He took her cell phone and identification card. She further testified that she did not know him. It was for the jury to determine credibility, and it was permitted to believe all, part, or none of the victim's testimony. *Commonwealth v. Andrulewicz,* 911 A.2d 162, 166 (Pa. Super. 2006), *citing Commonwealth v. Adams,* 882 A.2d 496, 499 (Pa. Super. 2005). Clearly, the jury believed the victim's testimony that she was threatened and sexually assaulted. It rejected the Appellant's version. Furthermore, the victim's testimony established all the elements of the offenses, including lack of consent. *See also, Commonwealth v. Charlton,* 902 A.2d 554, 562 (Pa. Super. 2006)(finding that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant); *Commonwealth v. Wall,* 953 A.2d 581, 584 (Pa. Super. 2008) ("A rape victim's uncorroborated testimony to penal penetration is sufficient to establish sexual intercourse and thus support a rape conviction.").

The evidence, as well as all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain the jury's verdict on all counts.

## C. Whether the identification of Appellant was tainted?

Appellant claims that the victim's identification was tainted. Appellant Rule 1925 (b) statement, at ¶ 3. This claim is ambiguous, convoluted and fails to meet the

8

specificity requirement of Rule 1925 (b), thereby hampering this Court's ability to address it. Assuming Appellant challenges the weight or sufficiency of the victim's identification, those claims were addressed above. Furthermore, there are no facts alleged that would amount to taint.

## D. Whether Appellant is a sexually violent predator?

Appellant claims this Court erred in finding him a sexually violent offender because, "Appellant has a diagnosis for anti-social disorder, has never been convicted of a previous sexual crime, and/or did not commit the crime in a more violent than necessary manner to complete the crimes as charged, which by definition are violent crimes." Appellant's Rule 1925 (b) statement, at ¶ 4. This sufficiency claim is meritless.

On appeal, "[q]uestions of evidentiary sufficiency present questions of law; thus, '[the Superior Court's] standard of review is de novo and [the Superior Court's] scope of review is plenary.'" *Commonwealth v. Bishop*, 936 A.2d 1136, 1141 (Pa. Super. 2007), *quoting Commonwealth v. Meals*, 590 Pa. 110, 912 A.2d 213, 218 (2006), *quoting Commonwealth v. Sanford*, 580 Pa. 604, 863 A.2d 428, 431 (2004). On review, the Superior Court considers the evidence in the light most favorable to the Commonwealth, which prevailed on this issue at trial. *Id.* Moreover, "[w]hen [the Superior Court] reviews the sufficiency of the evidence supporting a determination of SVP status, '[it] will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied'". *Commonwealth v. Fletcher*, 947 A.2d 776 (Pa. Super. 2008), *quoting Commonwealth v. Haughwout*, 837 A.2d 480, 484 (Pa. Super. 2003).

9

A "sexually violent predator" is defined as an individual convicted of an offense as set forth in Section 9799.14 (relating to sexual offenses and tier system) and who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. The statute defines "mental abnormality" as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* The term "predatory" is defined as an "act directed at a stranger or at a person which whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

> The standard of proof governing the determination of SVP status, i.e., clear and convincing evidence, has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt. The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Bishop, supra.* (internal citations and quotation marks omitted).

Once an individual is convicted of a sexually violent offense, the trial court must order the person to be assessed by the Sexual Offenders Assessment Board. *See* 42 Pa.C.S.A. § 9799.24(a). The Board, in making its assessment, must follow the procedure set forth in 42 Pa.C.S.A. § 9799.24. The relevant portions are as follows:

§ 9799.24. Assessments

. . .

10

**(b) Assessment.**--Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

11

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24.

Instantly, this Court directed the State Sexual Offender Assessment Board to perform an SVP assessment of Appellant. Ms. Brenda Manno, a licensed clinical social worker and member of the Board, conducted the assessment and prepared a report in which she concluded, to a reasonable degree of professional certainty, that Appellant met the statutory criteria for classification as a sexually violent person.

At the SVP hearing, Ms. Manno explained that she reviewed the court orders, police reports and records, affidavit of probable cause, court transcripts, Appellant's prior criminal record and records obtained from the Erie County Adult Probation. N.T. SVP Hearing and Sentencing, 03/06/13, at at 10. She explained the relevant statutory criteria that she considered and rendered her opinion that Appellant met the diagnosis for antisocial personality disorder. *Id.* at 11-15. She further concluded his behavior was predatory as defined under the statute. *Id.*, at 14.

In concluding that Appellant was a sexually violent predator, this Court credited Ms. Manno's testimony and her report. This Court also considered the record, all of the relevant statutory provisions, and made detailed findings. *Id.* at 25-33. Despite Appellant's argument to the contrary, the fact that this was his first sexual crime was of no moment. *See, Bishop,* at 1143, *citing Meals, supra* at 222 (noting that considerations set forth in the statute are not a simple "checklist" and that they are "separate and weighed accordingly). Appellant's assertion that he did not rape the victim "in a more violent than necessary manner to complete the crime" does not negate her findings. Accordingly, this Court properly concluded that the Commonwealth

12

presented clear and convincing evidence sufficient to establish that Appellant was a sexually violent predator.

### E. Whether Brenda A. Manno, a licensed social worker, was qualified to classify Appellant a sexually violent predator?

Appellant claims that Brenda A. Manno did not have authority to diagnose Appellant as sexually violent predator because "the Commonwealth relied on the testimony of a clinical social worker and not a licensed psychiatrist and/or psychologist and/or another medical expert as defined per the statute." Appellant's Rule 1925 (b) statement, at ¶ 5. His claim is contrary to Pennsylvania law.

The Pennsylvania Supreme Court has explicitly found that a social worker qualifies as a criminal justice expert for purposes of classifying a sex offender as a sexually violent predator. *Commonwealth v. Conklin,* 897 A.2d 1168, 1178 (Pa. 2006). Furthermore, the Court held that, "the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist; the opinion of a qualifying criminal justice expert suffices." *Id.* (footnote omitted). Accordingly, Ms. Manno was qualified to testify as an expert.

### F. Whether the Court committed a sentencing error?

Appellant claims his aggregate sentence, including consecutive sentences, is manifestly excessive, unreasonable and inconsistent with the objectives of the Sentencing Code. This claim is meritless.

Pennsylvania law makes clear that an appellant's challenge to the discretionary aspects of his sentence is not automatically reviewable as a matter of right. *Commonwealth v. Hunter,* 768 A.2d 1136 (Pa.Super. 2001); *Commonwealth v. Darden,*

13

531 A.2d 1144, 1146 (Pa.Super. 1987). When appealing the discretionary aspects of a sentence, an appellant: (1) must set forth in a separate concise statement the reasons relied upon for allowance of appeal, and (2) demonstrate a substantial question that the sentence imposed was not appropriate. *Commonwealth v. Lee*, 876 A.2d 408, 411 (Pa.Super. 2005); see also *Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002); 42 Pa.C.S.A. § 9781(b). The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal "furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases." *Commonwealth v. Williams*, 562 A.2d 1385, 1387 (Pa.Super. 1989) *(en banc)* (emphasis in original).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Losch*, 535 A.2d 115, 119 n.7 (Pa.Super. 1987). In this regard, our Supreme Court has stated:

> To demonstrate that a substantial question exists, a party must articulate reasons why a particular sentence raises doubts that the trial court did not properly consider [the] general guidelines provided by the legislature.

*Mouzon, supra*, at 622. Appellant is required to raise a colorable argument that the decision of the sentencing court was either inconsistent with a specific provision of the Sentencing Code or inappropriate under the Sentencing Code as a whole; that is, contrary to the fundamental norms that underlie the sentencing process. *Id.* An allegation that a sentencing court failed to consider or did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate. Such a challenge goes to the weight afforded the evidence and will not

14

be considered absent extraordinary circumstances. *Commonwealth v. Urrutia*, 653

A.2d 706, 710 (Pa. Super. 1995).

Continuing,

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (*en banc*) (internal

quotations and citations omitted). Further,

> In fashioning a sentence, the trial court must impose a term of confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact of the victim and to the community, and the rehabilitative needs of the defendant. . . . Although the trial court must consider the Sentencing Guidelines, the court is not obligated to impose a sentence deemed appropriate under the Sentencing Guidelines. At the same time, the trial court cannot justly sentence a defendant unless it possesses sufficient and accurate information about the circumstances of the offense and the character of the defendant to formulate its judgment. In imposing a defendant's sentence, the trial court must state the reasons for the sentence on the record. As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed.

*Commonwealth v. Begley*, 780 A.2d 605, 642-43 (Pa. 2001) (internal citations omitted).

A sentencing court is required to place on the record its reasons for imposition of

sentence. 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy this requirement

by identifying on the record that he/she was informed by a pre-sentence report.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *Commonwealth v. Pennington*,

751 A.2d 212, 217 (Pa.Super. 2000).

15

Where the sentencing court has the benefit of a pre-sentence report, the law presumes that the court was aware of the relevant information regarding the appellant's character and weighed those considerations along with the mitigating statutory factors delineated in the Sentencing Code. *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa.Super. 1995) (quoting *Commonwealth v. Devers, supra*); *Commonwealth v. Sanders*, 627 A.2d 183, 188 (Pa.Super. 1993). Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. *Cruz-Centeno, supra* (quoting *Devers, supra*); *Sanders, supra*.

A claim that a sentence is excessive due to imposition of consecutive sentences implicates the discretionary aspects of sentencing. *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010) *citing, Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595 (Pa. Super. 2010).

> Generally, Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa. Super. 2006). *See also Commonwealth v. Hoag*, 445 Pa. super. 455, 665 A.2d 1212, 1214 (Pa. Super. 1995)(stating appellant is not entitled to "volume discount" for his crimes by having all sentences run concurrently). *But see Commonwealth v. Dodge*, 957 A.2d 1198 (Pa. Super. 2008) *appeal denied*, 602 Pa. 662, 980 A.2d 605 (2009) (holding consecutive, standard range sentences on thirty-seven counts of **theft-related offenses** for aggregate sentence of 581/2 to 124 years' imprisonment constituted virtual life sentence and, thus, was so manifestly excessive as to raise substantial question). "Thus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Mastromarino, supra* at 587.

*Commonwealth v. Prisk,* 13 A.3d 526, 533 (Pa. Super. 2011).

Before imposing sentence, this Court considered the following: (1) the pre-sentence investigative report; (2) Pennsylvania Sentencing Code and all its factors; (3) the Pennsylvania Sentencing Guidelines (4) the sexual violent predator expert report; (5) letters written by Appellant and the victim; (6) statements made at time of sentencing; and, (7) the trial testimony. N.T. SVP Hearing and Sentencing, 03/06/14, at 58-60. The sentence was tailored to Appellant's individual situation and the reasons for the sentence imposed were clearly set forth on the record. Moreover, imposition of a consecutive sentence was appropriate given the nature of Appellant's actions and he was not entitled to a "volume discount". Accordingly, there was no sentencing error.

**G. Whether the trial court erred in denying any and/or all Post Trial Motions at the sentencing or within a post-sentence motion that were not included in Appellant's 1925 (b) statement?**

Appellant requests this Court to address any issues not mentioned in his Rule 1925 (b) statement. This claim fails to meet the specificity requirements of Rule 1925(b) and, therefore, cannot be addressed. *Commonwealth v. Allshouse,* 969 A.2d 1236 (Pa. Super. 2009).

## III.    CONCLUSION

Based upon the above, this Court respectfully requests that Appellant's judgment of sentence be affirmed.

DATED: May 15, 2014                          Respectfully submitted,

                                             E. DiSantis

                                             _____
                                             **Ernest J. DiSantis, Jr., President Judge**

Jack Daneri, Esquire
District Attorney

17

Jason Checque, Esquire
Counsel for Appellant

18